# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **SAMUEL TOSCANO, JR.** ) | **Case No. _____** |
| 115 Tuttle Avenue ) | |
| Spring Lake, NJ  07762, ) | **Judge _____** |
| ) | |
| *Individually and Derivatively as a shareholder of* ) | |
| ***Precision Dose, Inc.*** *and* ***Cup Pac Packaging,*** ) | **COMPLAINT** |
| ***Inc.,*** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **-v-** ) | |
| ) | |
| **ROBERT KOOPMAN** ) | |
| 722 Progressive Lane ) | |
| South Beloit, Illinois 61080, ) | |
| ) | |
| **FRANK DARNELL** ) | |
| 4202 Technology Drive, P.O. Box 6037 ) | |
| South Bend, Indiana 46660, ) | |
| ) | |
| **PRECISION DOSE, INC.** ) | |
| 722 Progressive Lane ) | |
| South Beloit, Illinois 61080, ) | |
| ) | |
| **CUP PAC PACKAGING, INC.** ) | |
| 722 Progressive Lane ) | |
| South Beloit, Illinois 61080, ) | |
| ) | |
| *and* ) | |
| ) | |
| **PRECISION DOSE PROPERTIES, INC.** ) | |
| 722 Progressive Lane ) | |
| South Beloit, Illinois 61080 ) | |
| ) | |
| **Defendants.** ) | |

Plaintiff Samuel Toscano, Jr. ("Plaintiff" or "Toscano"), individually and derivatively on

behalf of Precision Dose, Inc. ("Precision Dose Inc.") and Cup Pac Packaging, Inc. ("Cup Pac"),

by and through his undersigned counsel, states this Complaint against Defendants Robert

Koopman ("Koopman"), Frank Darnell ("Darnell"), Precision Dose Inc., Cup Pac, and Precision

Dose Properties ("Precision Dose Properties") (collectively, the "Defendants"), and in support states as follows:

## SUMMARY AND NATURE OF CLAIMS

1.     Precision Dose Inc. and Cup Pac are closely held Illinois corporations that sell specialized medical and food service products.  They are both owned by the same shareholders in the same percentages.  Plaintiff Toscano has a minority interest in both companies.  The companies are controlled by Mr. Toscano's fellow shareholders, Defendants Koopman and Darnell, who owe fiduciary duties to both companies and to minority shareholders such as Mr. Toscano.  In breach of those duties, Mr. Koopman and Mr. Darnell have ignored the rights of Mr. Toscano and/or other shareholders, and acted in their own self interest by, among other things: (1) usurping corporate opportunities by causing both companies to assign contractual rights and/or enter into lease agreements with Precision Dose Properties, a company controlled solely by Mr. Darnell and Mr. Koopman, for their own personal benefit; (2) paying Mr. Darnell a disguised monthly dividend of more than $11,000 under the guise of a "consulting agreement" (even though Mr. Darnell does not provide consulting services) and then hiding those payments from Mr. Toscano even after he specifically asked for information about this type of related party transaction; (3) refusing to sell the shares of a deceased shareholder as required by the companies' shareholder agreements; and (4) refusing to cooperate with a valuation of Mr. Toscano's shares by providing incomplete information to the valuator in order to artificially lower the shares' value.  Both Mr. Koopman and Mr. Darnell, and their family members, receive substantial income as employees of Precision Dose Inc. and Cup Pac, and they wish to continue to reap those personal rewards rather than act in the best interests of the companies and shareholders and either sell both companies or redeem Mr. Toscano's shares.  Mr. Toscano brings this Complaint pursuant to the Court's diversity jurisdiction, seeks relief as a minority

shareholder under the Illinois Business Corporations Act, and states claims for breach of fiduciary duty, breach of contract, unjust enrichment and for an equitable accounting.

## PARTIES

2.      Plaintiff Mr. Toscano is an individual and a citizen of New Jersey.

3.      Defendant Precision Dose Inc. is a closely held Illinois corporation with its principal place of business at 722 Progressive Lane, South Beloit, Illinois 61080, and is therefore a citizen of Illinois as defined by 28 U.S.C. §1332(c)(1).

4.      Defendant Cup Pac is a closely held Illinois corporation with its principal place of business at 722 Progressive Lane, South Beloit, Illinois 61080, and is therefore a citizen of Illinois as defined by 28 U.S.C. §1332(c)(1).

5.      Defendant Mr. Koopman is an individual who works in Illinois and (on information and belief) is a citizen of Illinois.

6.      Defendant Mr. Darnell is an individual and (on information and belief) is a citizen of Indiana and/or Florida.

7.      As alleged more fully below, Mr. Koopman and Mr. Darnell hold various positions at Precision Dose Inc. and at Cup Pac and are controlling shareholders of both companies.

8.      Defendant Precision Dose Properties is an Illinois corporation with its principal place of business at 722 Progressive Lane, South Beloit, Illinois 61080, and is therefore a citizen of Illinois as defined by 28 U.S.C. §1332(c)(1).

## JURISDICTION AND VENUE

9.      Mr. Toscano is a citizen of New Jersey.  None of the Defendants are citizens of New Jersey.  Precision Dose Inc., Cup Pac and Precision Dose Properties are Illinois citizens, and in this derivative action they are not considered plaintiffs for diversity purposes.  Mr. Darnell

and Mr. Koopman are citizens of Illinois and/or Florida. Mr. Toscano seeks damages well in excess of $75,000, including but not limited to (as more fully alleged below) compensation for disguised dividend payments that have been made since 2004 and which now exceed $11,000 per month.

10.     Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1), because this action is between citizens of different states and the amount in controversy exceeds $75,000.00.

11.     This Court has jurisdiction over Defendants, and venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)-(c). Defendants Precision Dose Inc., Cup Pac, Precision Dose Properties and Mr. Koopman reside in or are headquartered in this District, and most or all of the events giving rise to Mr. Toscano's claims occurred in this District.

## DERIVATIVE ALLEGATIONS

12.     Mr. Toscano brings this action both directly and derivatively in the right of and for the benefit of Precision Dose Inc. and Cup Pac, to redress injuries caused by the Defendants' misappropriation of corporate assets and breaches of fiduciary duty and contract, and to recover corporate assets which the Defendants have wasted and misappropriated for their personal benefit.

13.     Mr. Toscano was a shareholder of the Precision Dose Inc. and Cup Pac at the time of the transactions and breaches complained of herein and continues to hold such shares.

14.     Mr. Toscano will adequately and fairly represent the interests of Precision Dose Inc. and Cup Pac in enforcing and prosecuting the rights of Precision Dose Inc. and Cup Pac. Mr. Toscano is represented by qualified counsel with substantial experience in litigation of this nature.

15.     Mr. Toscano has asked the Boards of Directors of Precision Dose Inc. and Cup Pac for the relief he seeks here, but they have refused.

16.     By way of example, Mr. Toscano has repeatedly: (a) demanded that the lease transactions involving Precision Dose Properties (described more fully below) be unwound, including in a letter from counsel dated November 12, 2014; (b) demanded that the Kleinheinz Shares (as defined below) be repurchased pursuant to the applicable shareholder agreements (as more fully alleged below), including in correspondence from counsel dated February 17, 2014; (c) demanded that Precision Dose Inc. cancel the consulting agreement with Mr. Darnell that is the subject of allegations below via a letter from counsel dated November 26, 2014; (d) demanded that a fair valuation be conducted (as more fully alleged below), including in a letter from counsel dated December 17, 2013; and (e) demanded that the companies either purchase his shares or sell their assets as a going concern, including in the letter from counsel dated December 17, 2013.  The Boards of Directors have refused to take any of the actions demanded by Mr. Toscano.

17.     It would be futile for Mr. Toscano to make further demand on the Boards of Directors of Precision Dose Inc. and Cup Pac for several reasons.  First, the Boards of Directors (apart from Mr. Toscano) at present are composed of Defendant Mr. Koopman, Defendant Mr. Darnell, and just two other individuals (Thomas Anderson and the son of James E. Kleinheinz) both of whom are shareholders (or purport to represent the estate of a former shareholder) and who are personal friends and affiliates of the Defendants whose actions or inaction have resulted in the litigation at issue in this case.  The Boards of Directors' actions to date conclusively demonstrate that they will not take action to correct their own misconduct.  The Boards of Directors of Precision Dose Inc. and Cup Pac have intentionally and/or recklessly and in the

absence of good faith disregarded the best interests of Precision Dose Inc. and Cup Pac and their shareholders and personally participated in the wrongdoing detailed herein.

## FACTUAL ALLEGATIONS

### Precision Dose Inc. and Cup Pac Formation

18.     On or about June 24, 2003, Mr. Koopman, Mr. Darnell and James E. Kleinheinz ("Kleinheinz") formed Precision Dose Inc. as an Illinois corporation.

19.     Precision Dose Inc. is an FDA registered producer of unit-dose pharmaceutical products.  Its shares are not listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

20.     In or about 2005, Mr. Toscano and Thomas Anderson ("Anderson") began working with Precision Dose Inc., and as a result of that work both obtained an ownership interest in Precision Dose Inc.

21.     Specifically, in or about May 2005, Mr. Toscano became the beneficial owner of 16,666.665 shares of Precision Dose Inc. stock.

22.     Each of the shareholders of Precision Dose Inc. are parties to an Amended and Restated Shareholders' Management Agreement and Buy and Sell Agreement which (as revised) is dated December 31, 2008 (the "Precision Dose Shareholders Agreement") (attached to this Complaint as Exhibit A).

23.     In or about October 2009, Precision Dose Inc. and its shareholders agreed to purchase the assets of a company that did business as "Cup Pac Packaging" and to establish a new corporation called Cup Pac.

24.     Cup Pac is a co-packaging organization that specializes in portion cup, plastic canister, and composite can filling for the food and nutraceutical industries.  Its shares are not

listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association.

25.     Cup Pac was organized such that Precision Dose and Cup Pac would have identical ownership.  Each of the Shareholders of Cup Pac are parties to a Shareholders' Management Agreement and Buy and Sell Agreement dated October 7, 2009, as amended by a First Amendment to Shareholders' Management Agreement and Buy and Sell Agreement dated April 17, 2010 (the "Cup Pac Shareholders Agreement") (attached to this Complaint as Exhibit B).

26.     The substantive provisions of the Cup Pac Shareholders Agreement are identical to the Precision Dose Inc. Shareholders Agreement in all material respects.

27.     Accordingly, Mr. Toscano is also the beneficial owner of 16,666.665 shares of Cup Pac stock.

28.     Mr. Toscano also serves on the Boards of Directors of Precision Dose Inc. and Cup Pac.

**Koopman and Darnell Are Controlling Shareholders**

29.     At all times relevant to this Complaint, Mr. Koopman and Mr. Darnell have acted as the controlling shareholders of Precision Dose Inc. and Cup Pac, and effectively have complete control of the operations of both companies.

30.     Mr. Koopman serves as the Chief Executive Officer and President of each company.  He is also a member of the Compensation Committee of both corporations, and as a result exerts substantial influence and control over all of the employees of both companies.

31.     Moreover, one or both of the companies employ Mr. Koopman's wife and employ or recently employed at least four other members of Mr. Koopman's immediate family,

providing an indirect benefit to Mr. Koopman and also giving him further control over the operation of both companies.

32.     Mr. Koopman has the ability to control the direction of Precision Dose Inc. and Cup Pac.

33.     Mr. Darnell is the majority shareholder of both companies.  He also serves as the Treasurer of both companies, and is responsible for all of their funds and securities.  He serves as the Secretary of both companies, and is therefore the custodian of records of each company.   He also serves as a member of the Compensation Committee of both corporations, and as a result exerts substantial influence and control over all of the employees of both companies.

34.     Mr. Darnell has the ability to control the direction of Precision Dose Inc. and Cup Pac.

35.     As controlling shareholders and members of the Boards of Directors of Precision Dose Inc. and Cup Pac, Mr. Darnell and Mr. Koopman owe Mr. Toscano (as well as both corporations and the other shareholders) fiduciary duties and the obligation to exercise the highest degree of honesty and good faith in all of their dealings involving the companies.  They are required to deal fairly, honestly and openly with Mr. Toscano and his fellow stockholders and to disclose all material information to them.

36.     Mr. Darnell and Mr. Koopman, as well as other employees or agents of Precision Dose Inc. and Cup Pac (and as a result the companies themselves), have violated those duties, and have: (1) deprived Mr. Toscano of the ability to meaningfully participate in the management of the corporations; (2) acted in a manner that is illegal, oppressive, or fraudulent; and (3) caused corporate waste and mismanagement to occur, including but not limited to as follows.

**Precision Dose Properties Transactions**

37.     In addition to their interests in Precision Dose Inc. and Cup Pac, Mr. Koopman and Mr. Darnell are the sole shareholders (either individually or through affiliates) of Defendant Precision Dose Properties.

38.     Mr. Koopman and Mr. Darnell founded Precision Dose Properties in 2003 (before Mr. Toscano became a shareholder of Precision Dose Inc.) and (on information and belief) since that time it has owned the land on which Precision Dose Inc. operates.  Precision Dose Inc. has operated on the land pursuant to a lease agreement.

39.     When Mr. Toscano became a shareholder of Precision Dose Inc. in 2005, he was not offered and did not acquire any ownership interest in Precision Dose Properties.

40.     After Mr. Toscano became a shareholder of Precision Dose Inc. and after the formation of Cup Pac, Mr. Koopman and Mr. Darnell attempted to expand the relationship with Precision Dose Properties for their own benefit, to the detriment of Precision Dose Inc. and Cup Pac, and without the knowledge, consent or approval of Mr. Toscano and/or their Boards of Directors.

41.     Specifically, soon after the formation of Cup Pac, the Defendants caused Cup Pac to enter into an Industrial Building Lease with Sobo, Inc. dated October 30, 2009 (the "Sobo Lease Agreement"), under which Cup Pac leased real estate for its operations and under which it had the right and option to purchase that real estate.

42.     Then, on or about March 16, 2010, Defendant Koopman executed an Assignment, transferring Cup Pac's right to purchase the real estate under the Sobo Lease Agreement to Precision Dose Properties for no consideration.

43.     Mr. Koopman and Mr. Darnell controlled all of the actions of Precision Dose Properties and Cup Pac with respect to the March 16, 2010 assignment.

44.     In breach of their duties to Precision Dose Inc., Cup Pac and their shareholders (including Mr. Toscano), Mr. Koopman and Mr. Darnell took no steps to assure that this transaction, which directly benefitted them at the potential expense of Cup Pac, was in fact in the interests of Cup Pac.

45.     Cup Pac was not represented by independent legal counsel in connection with the March 16, 2010 assignment.

46.     The March 16, 2010 assignment was not approved by the Board of Directors or the shareholders of Cup Pac.

47.     Moreover, Mr. Koopman and Mr. Darnell never informed Mr. Toscano or the Board of Directors that Cup Pac could purchase the real estate under the Soho Lease Agreement, and the Board of Directors was never given the chance to determine whether purchasing that real estate would be beneficial to Cup Pac.

48.     Soon thereafter Precision Dose Properties exercised the option and purchased all of the real estate subject to the Soho Lease Agreement and leased the same back to Cup Pac, who paid rent to Precision Dose Properties.

49.     By paying rent to Precision Dose Properties, Cup Pac was directly benefitting Mr. Koopman and Mr. Darnell.

50.     On information and belief, in 2012, the lease agreements between Precision Dose Inc. and Cup Pac and Precision Dose Properties expired and/or were amended.

51.     As a result, on or about June 1, 2012, Precision Dose Properties entered into another Industrial Building Lease, this time with both Precision Dose Inc. and Cup Pac, which included the real estate on which both companies operated, including the real estate which Precision Dose Properties purchased under the Soho Lease Agreement (but which could have been purchased by Cup Pac).

52.     Once again, in violation of their duties to Precision Dose Inc. and Cup Pac and their shareholders (including Mr. Toscano), neither Mr. Darnell nor Mr. Koopman took any steps to protect the interests of those two companies in connection with the June 1, 2012 transaction, even though the transactions directly benefitted them at the expense of the two companies.

53.     Both of the June 1, 2012 lease agreements were negotiated on behalf of Precision Dose Inc. and Cup Pac *and* on behalf of Precision Dose Properties by Mr. Darnell and Mr. Koopman.

54.     Neither Precision Dose Inc. nor Cup Pac were represented by independent legal counsel in connection with the June 1, 2012 lease agreements.

55.     Neither the June 1, 2012 lease agreements nor the rents paid under them were disclosed to the Board of Directors or the stockholders of Precision Dose Inc. or Cup Pac or approved by any disinterested party.

56.     In 2014, Mr. Toscano requested and received information from counsel for Precision Dose Inc. and Cup Pac concerning the March 16, 2010 assignment and the June 1, 2012 lease agreements.

57.     In response to Mr. Toscano's inquiries and subsequent complaints about the March 16, 2010 assignment and the June 1, 2012 lease agreements, the Defendants committed to unwind the transactions.

58.     However, as of the date of this lawsuit, the Defendants have failed to make any effort to unwind such transactions or propose any reasonable means of unwinding the transactions or compensating Precision Dose Inc., Cup Pac, and the companies' shareholders, including Mr. Toscano, for the breach of fiduciary duties and the loss of a potential business opportunity.

**Failure to Sell or Transfer the Kleinheinz Shares**

59.      On December 26, 2011, Mr. Kleinheinz died.  At the time of his death he owned 10,000 shares of Precision Dose Inc. and 10,000 shares of Cup Pac both directly and indirectly through a trust (the "Kleinheinz Shares").

60.      After Mr. Kleinheinz's death, the Kleinheinz Shares temporarily were controlled by Mr. Kleinheinz's estate and/or a trust.

61.      However, Mr. Kleinheinz and his trust were parties to the Precision Dose Inc. Shareholders Agreement and the Cup Pac Shareholders Agreement, both of which required the Kleinheinz Shares to be transferred after his death.

62.      Specifically, pursuant to section 6 of those agreements, the companies and the other shareholders (including Mr. Koopman and Mr. Darnell) were required to perform a valuation and to sell or transfer the Kleinheinz Shares on or before June 26, 2013.  Pursuant to section 5 of those agreements, the companies were required to notify all other shareholders, including Mr. Toscano, about the potential transfer of the Kleinheinz Shares and to give all other shareholders, including Mr. Toscano, the option to purchase some or all of the Kleinheinz Shares.

63.      As of the date of this complaint, despite repeated requests, the shares owned by Mr. Kleinheinz and his trust have not been purchased or transferred or offered to all other shareholders, including Mr. Toscano, and no effort has been made by any of the Defendants to comply with their obligations under the two shareholder agreements.

64.      Instead, on information and belief, Mr. Koopman and/or Mr. Darnell and/or other representatives of Precision Dose Inc. and Cup Pac have informed the temporary holders of the Kleinheinz Shares that they don't have any obligation to transfer the shares because Precision

Dose Inc. and Cup Pac have purportedly waived their contractual obligations to value and transfer the Kleinheinz Shares.

65.     However, by their terms, both shareholders agreements may only be amended pursuant to a written agreement signed by all shareholders.  No such amendment has taken place.

66.     Despite multiple requests from Mr. Toscano, the Defendants have refused to take any action to enforce the obligations of the shareholders agreements on the temporary holders of the Kleinheinz Shares or to otherwise transfer or sell the shares.

### Disguised Dividend Payments to Mr. Darnell

67.     In November 2014, Mr. Toscano learned of the existence of a purported consulting agreement between Precision Dose Inc. and a company owned and controlled by Mr. Darnell.

68.     Pursuant to an agreement purportedly dated February 1, 2004 between Mr. Darnell and Precision Dose Inc. (the "Consulting Agreement"), Mr. Darnell is to receive a fee of $3,750.00 per month for consulting services.

69.     According to counsel for Precision Dose Inc., at some point after February 1, 2004 and well before November 2014, the Consulting Agreement was orally modified to increase the consulting fee to $11,666.67.

70.     Precision Dose Inc. has in fact paid Mr. Darnell and/or a company called South Bend Drug Company (an affiliate of Mr. Darnell) a monthly fee of at least $3,750 since February 1, 2004, and for a significant part of that time period has paid a monthly fee of $11,666.67, purportedly to satisfy its obligations under the Consulting Agreement.

71.     In total, the payments made under the Consulting Agreement to Mr. Darnell or his affiliate have significantly exceeded $75,000.

72.    On information and belief, Mr. Darnell does not provide consulting services to Precision Dose Inc. (apart from his role as a director and officer – for which he is compensated separately).

73.    Precision Dose Inc. does not receive any value in exchange for the payments made to Mr. Darnell or his affiliate under the Consulting Agreement.

74.    Neither the Consulting Agreement nor the purported oral modification to the Consulting Agreement to increase Mr. Darnell's payment were approved by the Precision Dose Inc. Board of Directors.

75.    The payments made to Mr. Darnell and his affiliate are, in fact, a disguised dividend payment which should have been (but was not) provided equally to all shareholders.

76.    The Defendants not only failed to disclose to all shareholders, including Mr. Toscano, the Consulting Agreement the alleged oral modification to the Consulting Agreement, and the payments purportedly made under the Consulting Agreement (despite a duty to do so), they also actively tried to conceal the existence of the alleged agreements and the payments from the shareholders, including Mr. Toscano.

77.    The Defendants never caused the Consulting Agreement nor the payments made under the Consulting Agreement to appear on the financial statements of Precision Dose Inc.

78.    Moreover, on or about October 12, 2012, Mr. Toscano, through counsel, specifically requested that counsel for Precision Dose Inc. and Cup Pac provide information about any transactions between the corporations and their shareholders (or their shareholders' affiliates).  On information and belief, Mr. Koopman and Mr. Darnell knew about this request.

79.    Nevertheless, counsel for Precision Dose Inc. and Cup Pac did not disclose the existence of the Consulting Agreement or the payments purportedly made pursuant to the Consulting Agreement when he responded to Mr. Toscano's inquiry on November 5, 2012.

14

80.     Mr. Toscano made subsequent requests for information about related party transactions, but was never told about the Consulting Agreement.

81.     Mr. Toscano was not provided a copy of the Consulting Agreement until November 26, 2014.

82.     Upon learning of the Consulting Agreement and the payments made to Mr. Darnell and his affiliate, Mr. Toscano requested that the Consulting Agreement be terminated and that the payments to Mr. Darnell cease effective December 1, 2014.

83.     Mr. Darnell and Mr. Koopman, as controlling shareholders of Precision Dose Inc. and Cup Pac, refused to terminate the Consulting Agreement and the payments to Mr. Darnell.

84.     On information and belief, Precision Dose Inc. continues to pay South Bend Drug Company $11,666.67 per month even though neither the company nor Mr. Darnell provide any services to Precision Dose Inc. in consideration for that payment.   No services are provided by Mr. Darnell or South Bend Drug Company pursuant to the Consulting Agreement, and neither Mr. Darnell nor South Bend Drug Company intend to provide any services to Precision Dose Inc. in consideration of the payments made pursuant to the Consulting Agreement.

**Manipulation of Valuations to Artificially Deflate Toscano's Share Value**

85.     On or about April 27, 2012, Precision Dose Inc. asked its primary outside accountant to prepare a valuation of the company.  At meetings of the Board of Directors, and at other times, the resulting valuation was roundly criticized by management (including Mr. Darnell and Mr. Koopman) as stating a value that was significantly lower than the actual value of Precision Dose Inc.

86.     In 2013, all of the shareholders (including Mr. Koopman, Mr. Darnell and Mr. Toscano) determined that it was appropriate for Precision Dose Inc. and Cup Pac to retain an accounting firm to conduct an independent valuation of Precision Dose Inc. and Cup Pac.

87.     The shareholders selected BKD, LLP ("BKD") to conduct the valuation, and Mr. Koopman and Mr. Darnell agreed to work with BKD to prepare a valuation as quickly as possible.

88.     At the same time, however, Mr. Koopman and Mr. Darnell knew (or should have known) that Mr. Toscano was interested in parting ways with Precision Dose Inc. and Cup Pac, and that it would be in their personal interest for a valuation of the company to be as low as possible, so that they would be able to acquire Mr. Toscano's shares for as little as possible.

89.     Despite their fiduciary and other obligations to Mr. Toscano and other shareholders, and despite their commitment to cooperate with BKD, Mr. Koopman and Mr. Darnell did not cooperate with BKD, and instead supplied inaccurate and incomplete information with the intent of achieving the lowest valuation possible for Precision Dose Inc. and Cup Pac.

90.     For example, despite previous reports from management (including Mr. Koopman and/or Mr. Darnell) to the Board that management expected growth to continue and to accelerate going forward, management refused to provide any projections of this expected growth or to even acknowledge that the growth would continue.

91.     This created absurd results as BKD was forced to perform a valuation based solely on past financial performance.  Among other things, BKD was required to assume for purposes of its valuation that TAGI, a division of Precision Dose Inc. which management has always maintained will lead the growth of Precision Dose Inc. going forward, had a negative value to Precision Dose Inc.

92.     Management (including Mr. Koopman and/or Mr. Darnell) also did not disclose to BKD the myriad of related party transactions entered into between Precision Dose Inc. and Cup Pac and their shareholders (and their affiliates).  As a result, BKD could not consider the

lease payments to related companies and the disguised dividend payments to Mr. Darnell as potential profits that should have been factored into the valuation.

93.     As a result of management's delays and inability to provide BKD information, it took more than 6 months for BKD to prepare an initial estimated valuation of the Defendant Corporations.

94.     BKD's initial valuation was similar to the April 2012 valuation, which management (including Mr. Koopman and Mr. Darnell) had criticized for being too low.

95.     Then, after a meeting with BKD and Mr. Koopman and/or Mr. Darnell, BKD lowered the valuation even further.  On information and belief, this was because Mr. Koopman and/or Mr. Darnell continued to supply inaccurate and incomplete information.

96.     BKD acknowledged that its valuation was only based on the information it was provided, and specifically stated in its report that the valuation did not in any way reflect the fair market value of Precision Dose Inc. or Cup Pac as a going concern or what a shareholder's proceeds would be as a result of a sale of one or both of the companies.

97.     Mr. Toscano (through counsel) also requested that Precision Dose Inc. and Cup Pac obtain a valuation that reflected the fair market value of his shares, without applying any discount due to his minority interest or to any potential lack of marketability.

98.     The valuation that was requested by Mr. Toscano (i.e., without any minority interest or marketability discounts) is consistent with the definition of "fair value" under applicable Illinois law, including as defined in the Illinois Business Corporations Act (806 ILCS 5/12.56(e)).

99.     Nevertheless, in spite of Mr. Toscano's request, the Defendants (on information and belief) asked BKD to apply a significant discount to Mr. Toscano's shares because Mr. Toscano is a minority shareholder whose shares have limited marketability.  BKD complied with

that request, and as a result its valuation in no way reflects a shareholder's potential proceeds in the event of a sale of the companies and does not reflect "fair value" under Illinois law.

### Refusal to Sell Companies and/or Purchase Mr. Toscano's Shares

100.     Mr. Toscano has informed the Board of Directors that it is in the best interest of Precision Dose Inc. and Cup Pac and their shareholders for the companies to be marketed for sale.   Such a sale would reflect the true value of the shareholders' interest in the companies, and would also prevent further dilution of the value of the shares due to the disguised dividends, waste, failure to accurately value the company and other misconduct (as alleged above).

101.     Mr. Toscano has informed the Board of Directors that, as an alternative, the companies should purchase his shares.

102.     Mr. Koopman and Mr. Darnell, and through them Precision Dose Inc. and Cup Pac, have rejected Mr. Toscano's requests and stated that they believe it would be inappropriate to sell the companies at this time.

103.     The basis for Mr. Koopman's and Mr. Darnell's refusal to consider a sale of Precision Dose Inc. and Cup Pac is not because they believe that holding the shares is in the best interest of Mr. Toscano and the other shareholders, but rather because Mr. Koopman, Mr. Darnell and their friends and family members are employed by and receive a substantial portion of their income from Precision Dose Inc. and Cup Pac through large salaries (and through dividend payments in the guise of consulting payments), and because companies they control continue to receive large payments from both companies.

104.     Mr. Koopman and Mr. Darnell receive other benefits from Precision Dose Inc. and Cup Pac as well, including an annual meeting of shareholders and employees that takes place in Florida, where travel and other expenses are paid for by both companies, even though both companies and all (or the vast majority) of their employees are located in Illinois.

105.     Moreover, on information and belief, given the repeated failure to disclose related party transactions and other benefits that they received (and to take steps to hide such transactions), Mr. Koopman and Mr. Darnell receive other benefits as a result of their control of both companies and/or have taken other actions which are detrimental to both companies.  Those other benefits and actions are, as a result of Defendants' actions, currently unknown to Mr. Toscano.

106.     Mr. Koopman and Mr. Darnell, and through them Precision Dose Inc. and Cup Pac, have also refused to purchase Mr. Toscano's shares even at the artificially engineered low value determined by BKD, let alone for anything resembling their true value, even though Precision Dose Inc. and Cup Pac are not substantially leveraged and could afford to pay for the shares and continue to operate.

107.     Paying for Mr. Toscano's shares might require Precision Dose Inc. and Cup Pac to refrain from making excessive salary payments and/or disguised dividend payments, and this is the true reason that Mr. Koopman and Mr. Darnell, and through them Precision Dose Inc. and Cup Pac, have refused to purchase those shares (and is the reason they attempted to artificially lower the value of his shares by failing to cooperate with BKD).

**COUNT ONE**
**(Relief for Oppression of Minority Shareholder Pursuant to the Illinois Business Corporation Act, 806 ILCS 5/12.56 *et seq.*)**

**(Asserted by Toscano Against Defendants Koopman, Darnell, Precision Dose Inc. and Cup Pac)**

108.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

109.     Precision Dose Inc. and Cup Pac are each non-public corporations as described in 806 ILCS 5/12.56.

110.    Mr. Toscano is a shareholder in both non-public corporations, Precision Dose Inc. and Cup Pac, as described in 806 ILCS 5/12.56.

111.    The overbearing and heavy-handed course of conduct of Mr. Koopman, Mr. Darnell, Precision Dose Inc. and Cup Pac as alleged above has resulted in the intentional oppression of Mr. Toscano's rights as a shareholder of Precision Dose Inc. and Cup Pac in violation of 806 ILCS 5/12.56(a).

112.    In oppressing Mr. Toscano's rights as a shareholder of Precision Dose Inc. and Cup Pac, Mr. Koopman's and Mr. Darnell's conduct was each intentional, fraudulent, malicious, willful, wanton, without just cause, reckless, in the absence of good faith and committed with the intent to injure Mr. Toscano.

113.    As a result of the actions of Mr. Koopman, Mr. Darnell, Precision Dose Inc. and Cup Pac: (1) Mr. Toscano has been deprived of the ability to meaningfully participate in the management of the Precision Dose Inc. and Cup Pac; (2) the directors or those in control of Precision Dose Inc. and Cup Pac have acted in a manner that is illegal, oppressive, and/or fraudulent; and (3) corporate waste and mismanagement have occurred.

WHEREFORE, Plaintiff Samuel Toscano Jr. respectfully prays that this Court enter judgment in his favor, and against Defendants Robert Koopman, Frank Darnell, Precision Dose Inc., and Cup Pac Packaging Inc., and award all applicable relief available to him under 806 ILCS 5/12.56, including but not limited to:

a.    Order requiring the performance, prohibition, alteration, or setting aside of the wrongful action(s) of Defendants detailed herein, including but not limited to a permanent injunction:  (i) enjoining Defendants from continuing to make or receive payments under the Consulting Agreement and Precision Dose Properties lease agreements (as alleged above); (ii) enjoining Defendants from taking improper, unilateral

control of the Precision Dose Inc. and Cup Pac Board of Directors, without honoring corporate formalities or conforming to legal requirements, and engaging in the wrongful usurpation of corporate authority and unauthorized ultra vires acts; and (iii) enjoining Defendants from fraudulently undervaluing the company;

b. An accounting related to this matter;

c. Payment of dividends that should have been paid to Mr. Toscano (which exceed $75,000);

d. Award of compensatory damages in an amount to be proven at trial;

e. Order requiring Precision Dose Inc. and Cup Pac, or one or more of the companies' other shareholders, to purchase all, but not less than all, of Mr. Toscano's shares for their fair value as defined by and on the terms determined under 805 ILCS 5/12.56 and other applicable law;

f. Appointment of a custodian to manage the corporations and to serve for an established term until Mr. Toscano is made whole, under the conditions prescribed by the court;

g. Attorney's fees and expenses incurred in bringing this action; and

h. Such other and further relief to which Mr. Toscano may be entitled.

### COUNT TWO
### (Breach of Fiduciary Duty)

**(Asserted by Toscano individually and derivatively on behalf of Precision Dose Inc. and Cup Pac against Defendants Koopman and Darnell)**

114.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 107 of the Complaint.

115.     As controlling shareholders, officers and directors of Precision Dose Inc. and Cup Pac, Mr. Darnell and Mr. Koopman owed both companies and their shareholders a duty of loyalty, good faith and honesty.

116.     By misrepresenting information and concealing vital information from Mr. Toscano, and by diverting corporate opportunities for their own personal benefit, Mr. Darnell and Mr. Koopman have breached their duties to Precision Dose Inc. and Cup Pac and their shareholders and have placed their own personal interests above the interests of the companies and their shareholders.

117.     Had Mr. Toscano (individually) and/or Precision Dose Inc. and Cup Pac (derivatively) known of Mr. Darnell's and Mr. Koopman's breach of their fiduciary duties, they would have acted differently.

118.     As a direct and proximate cause of Mr. Darnell's and Mr. Koopman's breaches of their duties, Mr. Toscano has directly suffered damages, including but not limited to damages to the value of his shares and because he has not received dividend payments to which he was entitled, in an amount that will be proven at trial but which exceeds $75,000.

119.     As a direct and proximate cause of Mr. Darnell's and Mr. Koopman's breaches of their duties, Precision Dose Inc. and Cup Pac have directly suffered damages in an amount that will be proven at trial but which exceeds $75,000.

120.     Mr. Koopman's and Mr. Darnell's conduct was each intentional, fraudulent, malicious, willful, wanton, without just cause, reckless, in the absence of good faith and committed with the intent to injure Mr. Toscano and/or Precision Dose Inc. and Cup Pac.

WHEREFORE, Plaintiff Samuel Toscano Jr. respectfully prays that this Court enter judgment in his favor individually and derivatively on behalf of Precision Dose Inc., and Cup Pac Packaging Inc., and against Defendants Robert Koopman and Frank Darnell, and award:

a. Compensatory damages in an amount to be proven at trial but which exceeds $75,000;

b. Permanent injunction (i) enjoining Defendants from continuing to make or receive payments under the Consulting Agreement and Precision Dose Properties lease agreements (as alleged above); (ii) enjoining Defendants from taking improper, unilateral control of the Precision Dose Inc. and Cup Pac Board of Directors, without honoring corporate formalities or conforming to legal requirements, and engaging in the wrongful usurpation of corporate authority and unauthorized ultra vires acts; and (iii) enjoining Defendants from fraudulently undervaluing the company;

c. Punitive damages in an amount to be determined at trial;

d. Attorney's fees and expenses incurred in bringing this action; and

e. Such other and further relief to which Mr. Toscano may be entitled.

### COUNT THREE
### (Breach of Contract)

**(Asserted by Toscano individually and derivatively on behalf of Precision Dose Inc. and Cup Pac against Defendants Koopman, Darnell, Precision Dose Inc. and Cup Pac)**

121. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 107 of the Complaint.

122. Mr. Toscano, Mr. Koopman, Mr. Darnell, and Precision Dose Inc. are parties to the Precision Dose Inc. Shareholders Agreement (attached to this Complaint as Exhibit A).

123. Mr. Toscano, Mr. Koopman, Mr. Darnell, and Cup Pac are parties to the Cup Pac Shareholders Agreement (attached to this Complaint as Exhibit B).

124. Mr. Toscano performed all of his obligations under the Precision Dose Inc. Shareholders Agreement, and the Cup Pac Shareholders Agreement.

125.   As alleged above, both the Precision Dose Inc. Shareholders Agreement and the Cup Pac Shareholders Agreement required the parties to the agreements to take certain actions to value and then potentially transfer the Kleinheinz Shares following the death of Mr. Kleinheinz.

126.   Mr. Darnell and Mr. Koopman have refused to take those steps and, on information and belief, take the position that they have "waived" those requirements.

127.   The Shareholder Agreements can only be amended in writing and with Mr. Toscano's consent, which he has never provided.

128.   Mr. Toscano has asked Mr. Darnell and Mr. Koopman, and through them Precision Dose Inc. and Cup Pac, to comply with their contractual obligations, but they have refused.

129.   As a result of the Defendants' refusal to comply with their contractual obligations, Mr. Toscano has been deprived of an opportunity to value Precision Dose Inc. and Cup Pac and to purchase the Kleinheinz Shares and damaged in an amount that he will prove at trial, but which exceeds $75,000.00.

130.   Mr. Koopman's and Mr. Darnell's conduct was each intentional, fraudulent, malicious, willful, wanton, without just cause, reckless, in the absence of good faith and committed with the intent to injure Mr. Toscano and/or Precision Dose Inc. and Cup Pac.

WHEREFORE, Plaintiff Samuel Toscano Jr. respectfully prays that this Court enter judgment in his favor individually and derivatively on behalf of Precision Dose Inc., and Cup Pac Packaging Inc., and against Defendants Robert Koopman, Frank Darnell, Precision Dose Inc., and Cup Pac Packaging Inc., and award:

    a.   Compensatory damages in an amount to be proven at trial but which exceeds $75,000;

b.   Permanent injunction mandating Defendants to comply with their contractual obligations described herein;

c.   Punitive damages in an amount to be determined at trial;

d.   Attorney's fees and expenses incurred in bringing this action; and

e.   Such other and further relief to which Mr. Toscano may be entitled.

**COUNT FOUR**
**(Unjust Enrichment)**

**(Asserted by Toscano individually and derivatively on behalf of Precision Dose Inc. and Cup Pac against Defendant Precision Dose Properties and, in the alternative, against Defendants Koopman and Darnell)**

131.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

132.   Precision Dose Properties received benefits to the detriment of Mr. Toscano and/or Precision Dose Inc. and Cup Pac, including but not limited to payments and transfers made to Precision Dose Properties, for which Cup Pac and Precision Dose Inc. did not receive value.

133.   Plaintiff states claims for breach of contract against Mr. Koopman and Mr. Darnell.  In the alternative to those claims only, Plaintiff states this claim against Mr. Koopman and Mr. Darnell, as they also received benefits to the detriment of Mr. Toscano (and Precision Dose Inc. and Cup Pac), including but not limited to any payments or benefits they received from Precision Dose Properties and the payments made by Precision Dose Inc. to Mr. Darnell under a purported consulting agreement for which Precision Dose Inc. and its shareholders did not receive value.

134.   These benefits should be disgorged from Defendants and returned to the shareholders of Precision Dose Inc. and Cup Pac.

135.    Precision Dose Properties' and, in the alternative, Mr. Koopman's and Mr. Darnell's conduct was each intentional, fraudulent, malicious, willful, wanton, without just cause, reckless, in the absence of good faith and committed with the intent to injure Mr. Toscano and/or Precision Dose Inc. and Cup Pac.

136.    Precision Dose Properties' and, in the alternative, Mr. Koopman's and Mr. Darnell's retention of such benefits violates the fundamental principles of justice, equity and good conscience.

WHEREFORE, Plaintiff Samuel Toscano Jr. respectfully prays that this Court enter judgment in his favor individually and derivatively on behalf of Precision Dose Inc., and Cup Pac Packaging Inc., and against Defendants Precision Dose Properties, Robert Koopman and Frank Darnell, and award:

a.   All money and/or benefits that Defendants Precision Dose Properties, Robert Koopman and/or Frank Darnell derived from the subject transactions in an amount to be proven at trial but which exceeds $75,000;

b.   Permanent injunction (i) enjoining Defendants from continuing to make or receive payments under the Consulting Agreement and Precision Dose Properties lease agreements (as alleged above); (ii) enjoining Defendants from taking improper, unilateral control of the Precision Dose Inc. and Cup Pac Board of Directors, without honoring corporate formalities or conforming to legal requirements, and engaging in the wrongful usurpation of corporate authority and unauthorized ultra vires acts; and (iii) enjoining Defendants from fraudulently undervaluing the company;

c.   Punitive damages in an amount to be determined at trial;

d.   Attorney's fees and expenses incurred in bringing this action; and

e.   Such other and further relief to which Mr. Toscano may be entitled.

## COUNT FIVE
### (Equitable Accounting)

**(Asserted by Toscano individually and derivatively on behalf of Precision Dose Inc. and Cup Pac against Defendants Precision Dose Inc., Cup Pac, Koopman and Darnell)**

137.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 of the Complaint.

138.     Mr. Toscano has been unable to determine the true value of his shares in Precision Dose Inc. and Cup Pac, due to the failure by Mr. Koopman and Mr. Darnell to provide basic information about the companies and to fully cooperate with the company hired to value the company.

139.     The information needed to value Mr. Toscano's shares is not in the possession of Mr. Toscano, but is in the possession of Mr. Koopman, Mr. Darnell, Precision Dose Inc. and Cup Pac.

140.     As set forth herein, Defendants Mr. Koopman and Mr. Darnell have breached and are continuing to breach their fiduciary duties towards Mr. Toscano, other shareholders and the companies.

141.     Given the actions of Defendants, a court ordered accounting is necessary in order to determine the fair market valuation of Mr. Toscano's shares.

WHEREFORE, Plaintiff Samuel Toscano Jr. respectfully prays that this Court enter judgment in his favor individually and derivatively on behalf of Precision Dose Inc., and Cup Pac Packaging Inc., and against Defendants Robert Koopman, Frank Darnell, Precision Dose Inc., and Cup Pac Packaging Inc., and award:

a.   Order granting Mr. Toscano an accounting of all financials of Precision Dose Inc., and Cup Pac Packaging Inc.;

b. Compensatory damages in an amount to be proven at trial but which exceeds $75,000;

c. Attorney's fees and expenses incurred in bringing this action; and

d. Such other and further relief to which Mr. Toscano may be entitled.

Respectfully submitted,

By   */s/ Benjamin G. Stewart*

Benjamin G. Stewart (ARDC #6279866)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone (513) 579-6400
Fax (513) 579-6457
BStewart@kmklaw.com

Erik J. Ives (ARDC #6289811)
FOX, SWIBEL, LEVIN & CARROLL, LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606-3414
PH (312) 224-1200
FX (312) 224-1202
eives@fslc.com

***Attorneys for Plaintiff Samuel Toscano, Jr., individually and derivatively as a shareholder of Precision Dose, Inc. and Cup Pac Packaging, Inc.***